Versus Samsung electronics now, he was. I believe I have 3 minutes remaining. No, you seem you were out of time. You may have saved 3 minutes, but you used it up. Thank you, your honor. May it please the court, your honor. This is the appeal of the district courts fee award and. The fee award is going to have to be vacated for both, I think, a technical reason, because if the court finds for Samsung on any of the issues, either on the 884 or affirming the IPR with respect to the 029, the court will have to vacate the final judgment and remand and in the absence of a final judgment. There can't be a determination of prevailing party, which is essential to an award of fees. So, as a technical matter, if Samsung prevails on any of the issues and vacates the final judgment, there will have to be a remand also of the fee award, but it's more than simply a technical issue that the case is the one that I'm relying on for the fact that it can't be a prevailing party without final resolution. But there's also a substantive reason for this, and that is because necessarily the award of fees relies on the court's assessment of the totality of the circumstances. That was true in this case. The court cited that at a 19. it's also reflected in this court's precedent, such as the Frazier case, and when any of the underpinnings of a fee determination have been vacated, it's appropriate to vacate the fee award as well. And to send it back to allow the district court in the first instance to reassess the totality of the circumstances. Is that same? Is that the same with respect to the exceptionality finding where the exceptionality finding was based on very narrow reference to litigation conduct? Well, I think the exceptionality finding was based on four different factors. Some of them certainly are influenced by the strength of Samsung's case. And, for example, if we were to win on the 029 because of the IPR, then our continuing infringement, so to speak, which is one of the factors that the court relied on, should, I think, weigh very differently. In the Octane Fitness case, the Supreme Court obviously reversed the notion that objective reasonableness was a single, identifiable, independent factor. But it did reiterate that the substantive strength of the party's litigating position was an important factor in determining whether a case is exceptional. But the judge didn't really rely on that, did he? I mean, did you suddenly produce documents timely just because one of the patents was invalid? No, Your Honor. But the fact that the court didn't recognize that is, we think, actually an independent ground for vacating it and sending it back and saying you need to at least address that significant issue. We don't think that it's an independent, you know, one of two prongs that has to be met. But we think the court does have to address it. And there was no mention of the fact that we had prevailed on the 290 patent. There was no... Because the court said, I am relying on their litigation misconduct. And it was so extreme that that factor alone is sufficient to justify an exceptionality. Well, Your Honor, the court very explicitly said there was no single factor that was the basis of its award. And so there were these four different factors. Again, the court didn't really address the substantive strength of our argument, which we think was itself an independent violation. But the first factor, if I'm remembering the correct opinion that he talks about, was copying. That is, the set of interactions, please come to Korea for a few weeks so we can download everything in your mind. Yes, that was one of... But the court was very explicit that no single factor was the basis. So if there would be a basis for him to reassess any of the four factors, that would be a sufficient basis to vacate the exceptionality finding and the fee award and send it back. Well, as I recall, the judge recited, it was in four groups, factors that pointed toward exceptionality, which are substantially, if not completely, independent of how strong your ultimate defense in the litigation was. And those wouldn't change if, say, one of the patents dropped out. It might well change on no prevailing party, but that's not really what we're talking about at this point. Well, Your Honor, I disagree because I think, at least in part, the fourth factor with respect to Samsung's continued infringement, if the 029 patent is not a valid patent and that part is going to be reversed, or there's a question as to whether the 884 is a valid patent, then our continued infringement of a patent that's not valid would be a factor that the court would have to reconsider. That was factor four. So I think that you can't take and isolate the exceptionality finding from what might have to happen on remand. And that's really my basic point, which is that the fee award, both the exceptionality finding and certainly the amount, because the court did not apportion at all, both of those analyses would be different analyses after a new trial with whatever the court does in sending it back. And the court should have to make those determinations again at that time. I do think that we've pointed out some serious flaws in the court's assessment of the facts underlying its other factors. For example, and I know that this goes to the willfulness finding, which is factor one, also part of the merits appeal. In the sanction that the court imposed that gave rise to the willfulness finding, because the sanction was we could not contest willfulness, part of it was to instruct the jury that Mr. Bond— Can I just be clear? Was the sanction that you couldn't contest willfulness or you couldn't put on evidence of non-willfulness? We could not put on evidence of a defense. I'm not sure it makes a difference, but I thought it was slightly more limited than you have to confess it, basically. That's right. It was we could not contest it by putting on a defense against it, right? And as part of it, there was also the jury instruction. And the jury instruction was that Mr. Lee and Mr. Bond had given false testimony about Samsung's assessment of the Imperium patents. None of the 10 emails that were disclosed during trial went to Samsung's assessment of the Imperium patents at all. It was further evidence that Mr. Taylor had conversations with Imperium who was trying to see if Samsung was interested. And I understand that those should have been produced. That's not a question. But when the judge said that they gave false testimony about their assessment of Imperium's patents, that was based on the emails that were disclosed before there was even deposition of those witnesses during discovery. So the willfulness finding itself is based on factual premises that are wrong. But I don't think the court needs to go there. When you say factual premises that are wrong, do we assess those? Wrong is not really a legal standard for review of fact. Do we assess those for clear error? I think that one is actually clear error. But is that the right standard? That would be the factual findings would be reviewed for clear error. But in the court's exceptionality finding, the court made a specific finding that in fact there was not any kind of adequate pre-suit investigation with respect to the validity of the patents when Samsung chose to keep infringing and copy. Well, Your Honor, this was based in part on the jury's finding of willfulness. He basically had precluded this defense. There's no problem with precluding a defense. I mean, you try to say that this is the same as entering judgment, but it's not. There's case after case after case from all kinds of different circuits where they say that a narrower thing would be to say you can't put on a defense or you can't assert a particular claim or put on evidence to support a particular claim. But it's very different than entering judgment, which is the primary case you rely on. I agree, although there are cases that say that striking a defense can be akin to a dismissal. This instruction, which precluded us from making a defense against willfulness, amounted to a $20 million sanction. $20 million because you take the six plus million and then you double that as part of the trebling. So that's another 13 plus million. And then you add the seven plus million of fees that were premised in large part on the finding of willfulness. That's a $20 million sanction. It's premised in large part upon faulty backfinding. For example, again, the district court faulted Mr. Bond because he said he had those emails in a file folder labeled Imperium on his system. And it's not true. It's simply not true. It's demonstrably not true. From an objective perspective, it shouldn't just be the cost of doing business for you to copy someone else's patent and then hope that later down the road that you can go through an IPR or something and find it to be invalid when you've never done that assessment. And so maybe a $20 million sanction is exactly what businesses like this need. Well, Your Honor, I think that the test under Fifth Circuit law is if it is a severe sanction, there has to be a finding of bad faith. There was no finding of bad faith. The sanction was imposed for copying. The sanction was imposed as a result of the failure to disclose the document. That's right. And that sanction, which amounted to a $20 million sanction, was premised on faulty backfinding. He didn't disclose documents that were kept in a different date range than what he remembered it to be. And there was no finding of bad faith because the judge said at the time, whether it was misremembering or something else, he did not find bad faith. But the main point, and I know that I'm already in my rebuttal time, the main point here is that the fee award is going to have to be vacated because if the court agrees with us on any of the issues and remands for anything because of the absence of a final judgment, and we think that the court's determination of exceptionality and its refusal to allocate the fees, et cetera, would all have to be redone on the basis of what is the world when the final judgment is rendered? How many of the patents have been knocked out by that time? Have they won and won a judgment on only one? Certainly, if they've won on none, there's no prevailing party. What if they've only won on one and we've won on two? That is not supposed to be the driving factor anymore after octane thickness. The Supreme Court made that very, very, very clear that while we made it the driving factor for years and years, the Supreme Court said no. I disagree, Your Honor. We have said you're allowed to consider it, but we have never said since octane that it has to be the driving factor. Well, at the very least, they have to be a prevailing party. So that means they have to have won. And if they've only won on one and we have won on two, that would require a reassessment of whether they were a prevailing party. It would certainly require a reassessment about whether there should be apportionment. And there would also, we think, have to be a reassessment of things such as the weight of factor four on which the court based its exceptionality finding. I'll reserve the remainder of my time. Thank you. Stegler. Good morning, Your Honors, and may it please the court. This court's pre- and post-octane fitness jurisprudence establishes that a party's willful infringement alone or litigation misconduct alone are sufficient to support an exceptionality finding on Section 285. Here, of course, the district court found that Samsung committed... You agree they have to, you'd have to be a prevailing party, right? And if we were to hold that either the 029 was invalid or the 884 was invalid or there had to be a new trial as to it, that would require reassessment of that question, right? Depending on if there was a remand, depending on what was remanded or overturned, then there may need to be additional consideration of prevailing party below, Your Honor. Indeed. Indeed. Well, when you say depending, but I think Judge Steig's point is, so either one, either the 029 or the 884, if we sent it back or set it aside, either one would require a full reassessment of prevailing party, right? Well, I don't know if it would require a full assessment, Your Honor, because certainly this court's jurisprudence, both pre- and post-octane, establishes that litigation misconduct is sufficient to establish an exceptional case. No, that doesn't address the, litigation misconduct has nothing to do with prevailing party. The award here was under 285, and 285 requires a finding of prevailing party, a predicate finding, right? Yes, Your Honor, and the court undertook that analysis, yes. So, if there's a change in the outcome as to an aspect of the case, the prevailing party issue has to be reevaluated, right? Your Honor, I don't agree that any change in the outcome of the case would require that. Certainly, you can envision a scenario where if Imperium is left with zero damages under the remand or the reversal that were to occur, then there would need to be a reassessment of prevailing party. However, if the 290 patent, for example, or the 029 patent, for example, if those invalidity decisions are affirmed at the patent office, and Imperium wasn't able to recover damages for the 029 patent, Imperium would still be the prevailing party here. You think that, but why don't we, wouldn't we have to send that back to the district court to evaluate the question again? Well, respectfully, Your Honor, the district court evaluated that question in its prevailing party analysis below at pages A18 and A19 of the appendix. The district court didn't deal with hypotheticals about a different outcome. The district court did assess Samsung's argument in the papers below that Samsung was the prevailing party because, at the time, it had succeeded at the patent office on two of the patents. But the district court said that's because we hadn't ruled on it yet. Right? But it's non-final. It's a non-final determination. So I've factored in, but because it's non-final, it's not, it doesn't carry great weight. That was certainly part of the district court's reasoning, but again, under the prevailing party test, which is a material difference in the relationship between the parties, if we're left with the 884 patent only, for example, Imperium would still be entitled to 70% of the damages in this case. A $4.8 million judgment trebled by the court's willfulness finding. But isn't that something you'd have to argue to the district court? I don't think the district court said independently of what happens to the 029, Imperium is a prevailing party here. I agree with that, Your Honor. Certainly the district court assessed it. It indicated it was aware of the IPR proceedings that had gone on, and it was aware of the jury's verdict on invalidity, certainly. Certainly. The court was well within its discretion here to award fees under either the willfulness judgment or based on Samsung's litigation misconduct. And, Your Honor, Samsung's arguments here don't show any clear error on the part of the district court. The law doesn't require the district court to consider the strength or reasonableness of every Samsung defense. Of course, Octane Fitness overturned the rigid Brooks Furniture test. Samsung really here is seeking to reimpose the prong of that test that would require the district court to analyze the objective baselessness of a party's litigating position. Have we had a case post-Octane in which issue of whether a district court has to at least address the strength of the losing party's case? We either said, yes, the district court does have to, and it's reversible error not to, or where we said there can be some cases in which the district court doesn't even have to advert to that. I'm aware of no case. Now that it's only a consideration and not a requirement. Indeed, Your Honor. And certainly, the University of Utah case, among others, highlights that. Yeah, but there's a Supreme Court case in the copyright area with the comparable provision of the copyright law. My recollection is the Supreme Court said, yes, you do have to consider substantive strength in that context, in that comparable provision. Are you familiar with that case? I am familiar with it, Your Honor. I believe you're referring to footnote six in the Octane Fitness case. No, it's not. No, no. There's a case involving the corresponding copyright provision to 285, and I can't remember what the section number is. But there's a Supreme Court case, if I recall correctly, that says in that context, under that statute, you have to consider substantive strength. Don't worry. It's an opinion by Justice Kagan. Yes, Your Honor. I believe we're talking about the same thing. I'm talking about the footnote in Octane Fitness that cites to that case. And the name of it is escaping me right now. And that footnote says those are potential considerations. And certainly, this Court's jurisprudence post-Octane, including the University of Utah case that we cited in our briefing, says, sure, consideration of objective reasonableness is something that a court can consider. But I'm aware of no case from this Court post-Octane that requires a district court to consider that. Well, my understanding of, again, that footnote from Octane, Your Honor, is that that's permissive, is what the Supreme Court is saying. But it's not permissive in the copyright context, right? I'm not sure in the copyright context, Your Honor. Certainly, the cases from this Court post-Octane identify that it may be a consideration. But we have said that litigation-inspired defenses are not relevant to willful infringement. That, in other words, the willfulness under the Supreme Court's case law, under Octane, has to be assessed pre-litigation. Now, while litigation-inspired defenses might be relevant to the overall assessment of fees or even the size of the fee award, it doesn't have anything to do with whether it's willful, right? Absolutely. We said that in WBIP. Absolutely, Your Honor. And here, I know counsel for Samsung alluded to some potential defense that Samsung was going to put on here. But there was no evidence in the record that Samsung performed any type of investigation before this case was filed that would show that Samsung didn't infringe Imperium's patents or that those patents were invalid. Did those bad emails and the copying only relate to one of the patents, or did it relate to all of the patents? They related to all the patents, Your Honor. Our willfulness case related to all three patents. And with respect to those emails, Samsung has shown no clear error in the Court's analysis of the evidence here. The Court understood the context of why those emails were so critical to our case. I asked Mr. Bang, who is a United States-trained lawyer. He's a member of the Bar of Virginia and New Jersey. I asked him at his deposition, did you respond to Mr. Kaler's July 12, 2012 email? He said, I don't remember. He produced an email mid-trial that showed he did respond to that email. And then he asked Mr. Kaler questions about our patent. Why does that show his line? Well, at the very least, Your Honor, it shows that we were prevented from developing a record that would have assisted our case that we showed the jury. Samsung's counsel stood up at opening argument, and then through his questioning of our corporate representative, told the jury that Samsung's interest in our patents ended in 2011. The emails produced during the middle of the night on the fourth day of trial showed that that was absolutely not the case. That's just one element that Judge Mazzott saw here. Do you know, does the record say, Mr. Kaler, was he the independent broker? Yes, he was the anonymous broker that Samsung hired. And was he under contract with Samsung? Yes, Your Honor. And were there payments being made to him as part of the contract? Do we know? He was at least being paid his expenses, from my recollection, Your Honor. And the record establishes that there's nothing in the record showing that Samsung terminated the relationship with Mr. Kaler. In fact, his contract rolls over year after year. So, Mr. Kaler, as far as we know, is still operating as a broker for Samsung. And was he looking for opportunities or something for Samsung, apart from this group of patents that's at issue? Indeed, he was, Your Honor. And testimony I received from Mr. Bang and others indicated that he has completed deals for Samsung and been compensated for those deals. And that's all in the record below. So, the fact that he wasn't terminated doesn't necessarily mean that Samsung had basically closed the book on its interest in these patents. There may be other reasons to think it hadn't closed the book, but not simply the fact that he continued in his work for Samsung, because that work, I think you just said, extended beyond these patents or maybe even beyond Imperium. Absolutely, Your Honor. And the emails produced at A8917-20 show that Samsung's interest didn't stop. Mr. Bang from inside Samsung was emailing Mr. Kaler after July 12, 2012, asking him questions. What's the significance of the continued interest or lack thereof? Because Samsung told the jury that it determined that our patents were not worth acquiring, that they weren't interested in them. These emails, and that their interest, yes, they looked at them a little bit in 2011, and then they ended it. These emails showed that that wasn't the case, Your Honor, and the district court understood that. What's the significance of the interest, lack of interest? Pardon, Your Honor? What is the significance of whether they were interested or uninterested? Well, Your Honor, the narrative that Samsung told the jury, and this is in our brief, was that the patents were worthless, that they determined they were worthless. They had no interest in them after the initial look at them, and that just wasn't the case. But is the legal issue that this goes to willfulness? Is that the question? Does it go to anything else? It absolutely goes to willfulness, Your Honor. I mean, willfulness is not a small deal. I don't mean to discount it, but it goes to willfulness. Does it go to something else? It goes to willfulness. It certainly goes to whether Samsung had any good faith belief that our patents were invalid or that they didn't infringe our patents. It goes to the credibility of Samsung's witnesses, at least three witnesses in the case. It certainly goes to copying, the allegations of copying that were proven at trial and the judge was not cited in his order awarding exceptional case here. Did the witnesses that the judge said had given false testimony testify about aspects of the case other than what you call good faith belief and willfulness? Did they testify, here's why this patent is invalid, for example, or something? Well, Samsung claimed and some of the testimony from their witnesses claimed that they had found prior art on our patents. Right, but they never identified it. Correct. They never identified it. They never produced an analysis from inside Samsung that would support that. They never produced the prior art. All we got on that was privilege objections. They wouldn't disclose any of that to us. And now they've come here and they're claiming they had this good faith basis defense. They had these willfulness defenses that they were precluded from putting on. And that's simply not the case. The record doesn't back that up. And that's all in our brief, Your Honor. Now, one thing I wanted to mention, one of the arguments they raised with regard to, they've claimed that the district court ignored the strength of their arguments on the 884 patent that they've presented on appeal. And, of course, that argument's waived. They never presented that to the district court below in the fees briefing. Never brought that up. And just tacking on to the prior argument about the strength of those defenses, in response to your question, Judge Toronto, Dr. Nykerk was impeached on numerous other issues. I cross-examined him for a lengthy amount of time and impeached him on a number of things. You can find that in the prior appeal appendix at A11993 and A11995. For example. What does this have to do with the, this sounds like the other case. Well, Your Honor, they've argued that their 884 defenses were so strong that the district court erred in not considering them as part of its evidence. I just simply wanted to point that out with regard to that. And the example I was thinking of is Dr. Nykerk claimed he couldn't remember where he got Johnson, where he found Johnson in the other prior argument. That's the prior argument about the other case. I'm happy to move on, Your Honor. Happy to move on. Otherwise, Your Honor, Samsung has, at least in the briefing, raised this supposed parade of horrible conduct that Imperium engaged in below. That's simply not supported by the record. There was no motion for sanctions by Samsung. There was no sanctions imposed by the district court. There was nothing to base that on. And indeed, they didn't even raise this in their fees briefing below. I see I'm short of time, Your Honor. I'm happy to answer any further questions that the panel may have. Okay. Thank you, Mr. Zeland. Thank you. So, Your Honor, Judge Zek, I think you were referencing footnote six of the Octane Fitness decision, which I think cites to Fogarty v. Fantasy Records, which is a copyright case. I think Kerstang may also stand for the proposition. Yeah, I think there was a copyright case after that which addressed this question. It may be Kerstang. I'm not 100 percent confident. But I think so. And we agree with you that although Octane Fitness did away with the absolute categorical rule, it suggests that substantive strength is still a factor. But I think relatedly is if, in fact, the entire fee award is based not on that assessment at all but solely on misconduct by the party, then this court's decision in the Rembrandt case from July 27, 2018, says that there has to be a relation between the extent of the misconduct and the fee award that's imposed as a penalty for that. Here it's the entirety of their whole case has been the basis of the sanction. It doesn't bear any proportion to the alleged misconduct. I do want to turn to pages 24 to 25 of the blue brief in the fee appeal. It goes through each of the ten emails that was disclosed mid-trial. These are emails but for two that come from Mr. Kaler saying, I got an inquiry from Imperium. Would you like to respond? I didn't get a response to your email. Do you have anything? Do you have any direction for me? Those are the emails. I think it's entirely understandable that Mr. Bong didn't recall this as part of the discussion. It was a year prior that Samsung had said, we found some prior art and we don't think they're worth pursuing. Mr. Kaler had come back and they said, no, I'm sorry. Thanks, but no thanks. He thought that was the end of it. But the Samsung's testimony on that prior art thing was all over the board. I mean, Mr. Bong testified to Mr. Lee as being the person who found it. Mr. Lee said, no, I didn't. I think Bong did. They didn't have any idea whether they had found prior art. All of that is legitimate. And the jury was entitled to hear all that. You are right that the jury was entitled to hear all that. But instead what happened is that they had the district judge in the robe on the podium say, those witnesses lied about their assessment of Imperium's patents. That was based on these 10 emails. Not one of them has anything to do with that subject. And that was, if there was anything misleading to the jury, it was that statement in the supposedly curative instruction. But as I said before, if there is a remand on anything, the fee award will have to be vacated and sent back. Thank you. Thank both counsels. I assume that concludes our session for this morning. All rise.